## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

**SDS SPORTS AGENCY, LLC**
5309 Monroe Rd., Ste. 118
Charlotte, North Carolina 28205

      Plaintiff,

      v.

**ALEJANDRO MAYORKAS,
DEPARTMENT OF HOMELAND
SECURITY,**
2707 Martin Luther King Jr. Ave., SE
Washington, DC 20528

**U.S. CITIZENSHIP AND
IMMIGRATION SERVICES**,
5900 Capital Gateway Drive
Mail Stop 2120
Camp Springs, MD 20588

**UR MENDOZA JADDOU,  DIRECTOR,
U.S. Citizenship and Immigration Services**
5900 Capital Gateway Drive
Camp Springs, MD 20588

**LAURA ZUCHOWSKI, DIRECTOR OF
VERMONT SERVICE CENTER,**
U.S. Citizenship and Immigration Services
38 River Rd.
Essex Junction, VT 05479

      Defendants.

Civil No.:

## COMPLAINT FOR DECLARATORY AND INJUCTIVE RELIEF

COMES NOW, SDS Sports Agency, LLC ("Plaintiff") a full-service management agency

for athletes, based in Charlotte, North Carolina, who filed a Form-129 Petition for a Nonimmigrant

Worker ("I-129"), to classify Beneficiary Francis Leo Lopez ("Lopez" or "Beneficiary") as an O-

1A internationally recognized athlete. On September 7, 2021, Defendants Alejandro Mayorkas,

Secretary of the Department of Homeland Security ("Mayorkas"), United States Citizenship and Immigration Services ("USCIS"), Ur Mendoza Jaddou, Director of U.S. Citizenship and Immigration Services ("Jaddou"), and Laura Zuchowski ("Zuchowski"), Director of Vermont Service Center of U.S. Citizenship and Immigration Services (collectively, the "Defendants"), improperly denied Plaintiff's I-129. Plaintiff files this civil action seeking review of Defendants' denial of Plaintiff's I-129 and respectfully requests that this Court reverse the arbitrary and capricious denial of Plaintiff's I-129.

## JURISDICTION

1.      This case arises under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). This Court has authority to grant relief under the APA and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

2.      Pursuant to 5 U.S.C. § 702, the USCIS has waived sovereign immunity over any claim that an agency, or an officer or employee of an agency, acted, or failed to act, in an official capacity and for which a person has suffered a legal wrong.

3.      Plaintiff may seek judicial review upon denial of its visa petition without any further administrative appeal. See *EG Enterprises, Inc. v. Dept. of Homeland Sec.*, 467 F. Supp. 2d 728, 733 (E.D. Mich. 2006) (exercising jurisdiction upon finding plaintiff was not required to appeal the denial of its H-1B visa petition to the Administrative Appeals Office prior to filing suit; noting USCIS concurrence); *Young v. Reno*, 114 F.3d 879 (9th Cir. 1997) (Petitioner was not required to appeal her visa revocation to the Board of Immigration Appeals prior to seeking review in district court).

4.      Venue in this district is proper under 28 U.S.C. § 1391(e)(1) Plaintiff's principal place of business is in Charlotte, North Carolina, which lies within the jurisdiction of this Court. Further, a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the Western District of North Carolina.

**PARTIES**

5.      Plaintiff SDS Sports Agency, LLC. Is a full-service management agency for athletes, based in Charlotte, North Carolina.

6.      Defendant Alejandro Mayorkas is sued in his official capacity as the Secretary of the Department of Homeland. In this position Mr. Mayorkas is in charge of the adjudication of all immigration benefits requests, including the request made the basis of this lawsuit.

7.      Defendant USCIS is the agency within the Department of Homeland Security ("DHS") responsible for adjudicating immigration benefits, including O-1 petitions. USCIS is the agency that denied Plaintiff's O-1A petition, which is the subject of this Complaint.

8.      Defendant Ur Mendoza Jaddou is sued in her official capacity as, at the time this Complaint is filed, the Senior Official Performing the Duties of the Director. In this position Ms. Jaddou is responsible for overseeing the adjudication of immigration benefits and establishing and implementing governing policies. Ms. Jaddou also has the responsibility of adjudicating O-1A petitions, such as the one that is the subject of this Complaint.

9.      Defendant Laura Zuchowski is sued in her official capacity as Director of U.S. Citizenship and Immigration Services Vermont Service Center. Ms. Zuchowski is the officer who denied Plaintiff's O-1A petition.

**LEGAL BACKGROUND**

10.     Pursuant to the INA, a United States employer may sponsor a qualified foreign national who, *inter alia*, has "extraordinary ability in the sciences, arts, education, business or athletics." INA §§101(a)(15)(O), 214(i); 8 U.S.C. §§1101(a)(15)(O), 1184(c); 8 C.F.R. §214.2(o)(1)(i).

11.     The Code of Federal Regulations ("CFR") has defined "extraordinary ability" as a "level of expertise indicating that the person is one of the small percentage who have arisen to the very top of their field of endeavor." *See* 8 CFR §214.2(o)(3)(ii).

12.     In addition to establishing that the proffered beneficiary has "extraordinary ability" as defined above, a petitioner must also demonstrate sustained national or international acclaim and recognition for achievements in the field of expertise by providing evidence of the following:

(1) Receipt of a major, internationally recognized award; or

(2) At least ***three*** of the following forms of documentation:

> a.   Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;
>
> b.   Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
>
> c.   Published material in professional or major trade publications or major media about the alien, relating to the alien's work in the field for which classification is sought, which shall include the title, date, and author of such published material, and any necessary translation;
>
> d.   Evidence of the alien's participation on a panel, or individually, as a judge of the work of others in the same or in an allied field of specialization to that for which classification is sought;
>
> e.   Evidence of the alien's original scientific, scholarly, or business-related contributions of major significance in the field;

Case 3:22-cv-00044-FDW-DSC   Document 1   Filed 01/31/22   Page 4 of 22

      f.   Evidence of the alien's authorship of scholarly articles in the field, in professional journals, or other major media;

      g.   Evidence that the alien has either commanded a high salary or will command a high salary or other remuneration for services, evidenced by contracts or other reliable evidence.

(3) If the criteria in 8 CFR §214.2(o)(3)(iii) do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence in order to establish the beneficiary's eligibility.

*See* 8 CFR §214.2(o)(3)(iii)(B) (emphasis added).

13.     A petitioner for an O-1A nonimmigrant visa must be a United States employer, a United States agent for multiple employers, a foreign employer acting through a United States agent, or a United States agent functioning as the employer navigating and/or directing the career of the beneficiary. *See* 8 CFR, §214.2(o)(2)(i). DHS requires that, whichever structure is chosen, the petitioner assert the following: (1) the contents of the petition are true; (2) the petitioner agrees to receive service of process on behalf of the beneficiary; and (3) the petitioner agrees to cover the cost of travel to the home country in the event that the visa is terminated early.

14.     In the present matter, the petitioner filed as a United States agent for East West Private LLC. Accordingly, as an agent for East West Private LLC performing the function of an employer, the agent/petitioner must provide the contractual agreement between the agent, East West Private and the beneficiary, which specifies the wage offered and the other terms and conditions of employment of the beneficiary. 8 CFR, §214.2(o)(2)(iv)(E).

15.     In a proceeding, such as the one that makes the basis of this Complaint, a petitioner bears the burden of establishing eligibility for the benefits sought. *See Matter of Brantigan,* 11 I&N Dec. 493 (B.I.A. 1966).

16.     The petitioner must demonstrate by preponderance of the evidence that the beneficiary has "extraordinary ability", as defined by 8 CFR §214.2(o)(3)(ii), and that the beneficiary has sustained acclaim, as required by 8 CFR, §214.2(o)(3)(iii). As such, even if the director has some doubt as to the truth, if the petitioner submits relevant, probative, and credible evidence that leads the director to believe that the claim is "probably true" or "more likely than not," the petitioner has satisfied the standard of proof. *See U.S. v. Cardoza-Fonseca*, 480 U.S. 421 (1987) (defining "more likely than not" as a greater than 50 percent probably of something occurring").

17.     Here, Defendants improperly denied Plaintiff's I-129 holding that Plaintiff failed to satisfy at least three of the eight criteria set forth above and outlined in 8 CFR, §214.2(o)(3)(iii). Further, Defendants claimed that Plaintiff failed to provide sufficient evidence to establish the structure of the petitioner, as a United States agent for East West Private LLC, a sports agency functioning employer.

18.     A final agency action, such as the denial in the present matter, will only be set aside if it was "arbitrary, capricious, an abuse of discretion and not in accordance with the law." *See* 5 U.S. Code § 706(2)(A).

19.     Plaintiff requests this Court hold Defendants' denial of Plaintiff's I-129 unlawful because the denial was arbitrary and capricious. *See* 5 U.S. Code § 706(2)(A).

## **FACTUAL BACKGROUND**

20.     On or about August 9, 2021, Plaintiff filed a Form I-129, Petition for a Nonimmigrant Worker, to classify beneficiary, Lopez, as an O-1A internationally recognized athlete, due to his extraordinary ability and achievements as a world class basketball player.

21.     Plaintiff is the O-1A petitioner for East West Private LLC, a sports agency committed to bringing elite international talent to the United States. Meaning, Plaintiff filed as a United States agent petitioner for East West Private, functioning as the employer.

22.     Defendant USCIS issued a receipt notice for Petitioner's Form I-129 on August 12, 2021.

23.     Mr. Lopez, at only 18 years old, has already achieved more in his chosen profession than most people do in a lifetime. Just a month after Mr. Lopez's 18th birthday, he had the distinguished honor of becoming one of the youngest players to ever play for the Philippines Men's Senior Team in an official International Basketball Federation ("FIBA") tournament, which is known as the highest level of international basketball competition outside of the Olympics. Prior to competing in FIBA, he was named among the 2020 SLAM Philippines Rising Stars, which is a list of top high school basketball players in the country. In addition to the two honors, Mr. Lopez has received the following, non-exhaustive list of individual awards: 2020 NCAA Mythical 5, 2019 Batang Gilas U16 4-Star Prospect, 2018 BBI UI7 Mythical 5, and the 2018 MILCU U17 Most Valuable Player. Mr. Lopez's exceptional achievements are why Overtime Elite Pro League ("OTE") offered Mr. Lopez a professional contract.

24.     As stated above, Plaintiff filed the O-1A petition as a United States agent petitioner for the employer, East West Private. Plaintiff was merely acting as the petitioner for the employer, East West Private, LLC, on Mr. Lopez's behalf. East West Private, LLC ("EWP") is a full-service management agency for athletes offering athlete development services, mapping out roads to success, contract negotiation, procuring marketing and endorsement opportunities, financial advice, and preparing clients for careers in and after basketball. Plaintiff and EWP together function as the employer for Mr. Lopez. EWP, through its licensed basketball agent Joey Bell,

negotiated a contract for OTE to sign Mr. Lopez to train with OTE. That is the purpose of EWP, to negotiate contracts in Mr. Lopez's best interests.

25.    In support of its I-129 petition, Plaintiff supplied the following (non-exhaustive list) of relevant documentation: (1) letter in support of the petition by Plaintiff, which included the summary of the terms of the agreement between Plaintiff, EWP, and Mr. Lopez, which listed the prospective wage, as well as the requisite Itinerary, Acknowledgement and Consent to Agreements; (2) information about SDS Sports Agency; (2) numerous reputable media outlet articles, all referencing or solely written about Mr. Lopez and his extraordinary ability as a basketball player; (3) a list of all national rankings, for which Mr. Lopez was named; and (4) a list of all international tournaments, in which Mr. Lopez competed, along with the final ranking for each game.

26.    On August 17, 2021, Defendants issued a Request for Evidence ("RFE"), alleging that Plaintiff failed to submit sufficient evidence to show that the position offered to beneficiary qualified as a "specialty occupation" as defined by both 8 U.S.C. §1184(i) and 8 CFR, section 214.2(h)(4)(iii)(A).

27.    In the RFE, Defendants stated the Plaintiff failed to satisfy at least three of the eight criteria set forth above and outlined in 8 CFR, §214.2(o)(3)(iii), to show national or international acclaim or recognition. It should be noted that Defendants did recognize that Plaintiff satisfied one of the eight criteria outlined in 8 CFR, §214.2(o)(3)(iii). Specifically, Defendants conceded that Plaintiff satisfied the third criterion: published material. *See* 8 CFR, §214.2(o)(3)(iii)(B)(2). Defendants failed to properly apply the requisite law, as well as their own internal policies, which are outlined in the USCIS policy manual, to the evidence provided by Plaintiff. In fact, Defendant completely disregarded the laundry list of evidence Plaintiff submitted with its I-129 petition,

namely the plethora of letters written by experts in the field, as well as the numerous articles which confirmed the national and international acclaim that Mr. Lopez has received.

28.    The RFE offered Plaintiff the opportunity to submit additional evidence showing that Mr. Lopez has sustained national and international acclaim, and a level of expertise indicating that he is one of the small percentage who has risen to the very top of the field of endeavor, as defined by 8 CFR §214.2(o)(3)(ii) and 8 CFR §214.2(o)(3)(iii)(B).

29.    Plaintiff timely responded to the RFE. In the response, Plaintiff included significant supplemental evidence showing that Mr. Lopez has extraordinary ability in the field of athletics. In addition to the supplemental evidence, Plaintiff included evidence already in the record, since Defendant USCIS did not take notice of and/or completely disregarded a large portion of the initial evidence included in the I-129 petition. The supplemental evidence included, but is not limited to, the following: additional articles about Mr. Lopez, including articles published by ESPN a letter outlining Mr. Lopez's appointment to the Philippines National Basketball team; professional evaluation letters, written by experts in the field of basketball; and a copy of the contract between Overtime Elite and Mr. Lopez. The initial evidence Plaintiff submitted with the Form I-129 and the supplemental evidence submitted in response to the RFE was more than sufficient to establish that the Mr. Lopez has sustained national and international acclaim, and a level of expertise indicating that he is one of the small percentage who has risen to the very top of the field of endeavor, as defined by 8 CFR §214.2(o)(3)(ii) and under five of the eight criteria set forth in 8 CFR §214.2(o)(3)(iii)(B).

30.    On September 7, 2021, Defendant USCIS issued a decision denying the Plaintiff's I-129 (the "Denial").

31.     Defendant USCIS unreasonably denied Plaintiff's petition holding that Plaintiff failed at least three of the eight criterion requirements set forth in 8 CFR §214.2(o)(3)(iii)(B). However, Plaintiff provided substantial evidence that demonstrated Mr. Lopez satisfied not only atleast three of the criteria, but five of the eight criterion set forth in 8 CFR §214.2(o)(3)(iii)(B). Defendant USCIS not only failed to properly apply the regulatory tests outlined in 8 CFR §214.2(o)(3)(iii)(B), as well as their own policies outlined in the USCIS policy manual, but also failed to provide any logical and/or reasonable explanation as to why Plaintiff failed to satisfy each requirement. Rather, Defendant USCIS's decision was riddled with boilerplate explanations, erroneous statements of law, and a complete misunderstanding of the facts supporting the Petition.

## STATEMENT OF CLAIMS

### Count One: APA–the Denial is in Violation of 5 U.S.C. §706(2)(A)

32.     Plaintiff realleges and incorporates herein by reference all allegations set forth above.

33.     The APA empowers this Court to set aside a final agency action where, as in the present matter, the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. §706(2)(A). Under this standard, a court may reverse an agency decision if:

> The agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

34.     USCIS's decision must reflect that it "considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action." *Noroozi v.*

Case 3:22-cv-00044-FDW-DSC   Document 1   Filed 01/31/22   Page 10 of 22

*Napolitano*, No. 14 cv 2012 (PAE), 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012) (citing *J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2nd Cir. 2000))

35.     Defendants wholly failed to discuss or otherwise demonstrate they considered Plaintiff's abundance of evidence and they misapplied the legal standards governing the decision. Specifically, Defendants concluded that the beneficiary did not satisfy the requirement of having "sustained national or international acclaim," due to his age. Defendants consistently concluded that Mr. Lopez's achievements were based on his status as a youth basketball player, and not compared to the field as a whole. This conclusion runs counter to USCIS's own internal policies. Pursuant to Chapter 4 of the USCIS Policy Manual, "sustained" is defined as the following:

> [T]he word "sustained" does not imply an age limit on the beneficiary. *A beneficiary may be very young in his or her career and still be able to show sustained acclaim*. There is also no definitive time frame on what constitutes "sustained." If a person was recognized for a particular achievement, the officer should determine whether the person continues to maintain a comparable level of acclaim in the field of expertise since the person was originally afforded that recognition.

*See* Chapter 4 of the USCIS Policy Manual (emphasis added).

At the mere age of eighteen (18), Mr. Lopez has received countless honors and achievements the most prestigious being his participation in the 2021 FIBA Asia Cup where he competed as a member of the Philippines Senior Men's National Basketball Team. Mr. Lopez continues to play with the team to this day. The fact that Mr. Lopez is already playing basketball at the highest levels of international competition despite his youth should have been viewed by USCIS as evidence *in favor* of his Petition as it  shows "sustained" his level of achievement in basketball.

36.     As described herein, and even though the beneficiary need only satisfy at least three of the eight criteria outlined in 8 CFR §214.2(o)(3)(iii)(B), Plaintiff satisfied five (5) of the eight

(8) criteria. Defendants' denial is indisputably arbitrary and capricious, as the denial runs counter to the evidence in the record and must be reversed.

**A.** ***Plaintiff Sufficiently Established that Mr. Lopez has Sustained National and International Acclaim***

    **i.**    <u>**Awards**</u>

37. To satisfy the first criterion outlined in 8 CFR §214.2(o)(3)(iii)(B)(1), a petitioner must provide sufficient "documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor." Defendants improperly concluded that Plaintiff failed to meet this criterion.

38. In support of the first criterion, Plaintiff submitted evidence of Mr. Lopez's participation with the 2020 Philippines Men's National Basketball Team, 2020 SLAM Philippines Rising Stars, the 2020 NCAA Mythical 5, and the 2018 BBI U17 Mythical 5. Additionally, Plaintiff submitted evidence of Mr. Lopez's achievements as being named the 2018 MILCU U17 Most Valuable Player and the 2019 Batang Gilas U16 4-Star Prospect. Most notably, and as stated above, was the evidence Plaintiff submitted showing Mr. Lopez's membership with the Philippines Men's Senior Team. Mr. Lopez was one of the youngest players on the National Team when he played at the 2021 FIBA Asia Cup. As Defendants pointed out in both the RFE, and in the denial, Mr. Lopez did not make the Olympic team. Nonetheless, Mr. Lopez is still playing with the Gilas Pilipinas, as evidenced by the article Plaintiff included with its I-129 petition, titled "LeBron Lopez still part of Gilas Pilipinas' future despite FIBA OQT cut."

39. Additionally, in response to the RFE, Plaintiff provided letters of support from Brandon Williams, a former NBA player and currently the Chief of Staff for the Philadelphia 76ers; Joel Bell, a Sports Agent for more than 20 years, who represents a number of NBA players; and Timothy Fuller, a prior NBA player and current Director of Scouting and Recruitment at

Overtime Elite. These letters outlined the achievements of Mr. Lopez, their opinions of his skill and future as a basketball player, and their unequivocal support for his admittance to play basketball in the United States. In the letter written by Timothy Fuller, he stated in regard to the Mythical team, "the Mythical team that is a Pantheon to all of the great basketball players" and "to be named in this team is to be revered throughout history." As stated above, Mr. Lopez was named 2020 NCAA Mythical 5 and 2018 BBI U17 Mythical 5. In the letter written by Brandon Williams, he stated, "He [Mr. Lopez] has several awards to his credit, including the 2020 SLAM Philippines Rising Stars and 2018 MILCU U17 Most Valuable Player." Mr. Williams goes on to say, "one of his [Mr. Lopez's] most notable achievements is his selection to the Philippines National Basketball Team at a very young age."

40. Despite the ample evidence provided by Plaintiff for the first criterion, Defendants concluded that "these honors or teams appear to be based on the beneficiary's status as a youth basketball player and not compared to the field as a whole." This statement ignores the fact that, as a youth, Mr. Lopez was competing against top professional players around the world of all ages, not simply against *other* precocious youths. Defendants went on to state that "the record lacks specific documentation detailing how and why the aforementioned honors are nationally or internationally recognized prizes or awards for excellence in the field of endeavor. *Id*. This conclusion is without basis in law or fact. As outlined above, it is clear that Mr. Lopez's participation in the 2021 FIBA Asia Cup is an achievement that should not be taken lightly, as *very few basketball players receive this opportunity*, regardless of their age. **Specifically, he was the youngest player to be play in a FIBA cup in thirty-two (32) years**. Plaintiff provided letters written by professionals in the field of basketball, outlining the significance of the honors Mr.

Lopez has received, as well as articles confirming that Mr. Lopez has sustained those achievements, as he is still a part of the Gilas Pilipinas' pool.

<strong>ii.     <u>Membership in Associations</u></strong>

41. The second criterion requires that the Plaintiff establish that the beneficiary belongs to associations requiring outstanding achievements, as judged by recognized national or international experts in their disciplines or fields. *See* 8 CFR §214.2(o)(3)(iii)(B)(2).

42. In support of this criteria, Plaintiff submitted the following evidence: (1) Mr. Lopez's membership on the Philippines Men's National Basketball Team, Mythical Team and his participation in the 2021 FIBA Asia Cup; (2) letters from professionals in the field of basketball, corroborating the extent of Mr. Lopez's achievements; (3) articles outlining how exceptional it is that Mr. Lopez was a member of these various teams, namely the Philippines Men's National Basketball Team. Despite the indisputable distinguished honor, it is to be a member of the Philippines Men's National Basketball Team, as well as playing in the 2021 FIBA Asia Cup, Defendant's concluded that they "cannot determine whether the beneficiary's achievements are considered outstanding as judged by recognized national or international experts in related fields or disciplines." Further, Defendants went as far to say that Plaintiff "did not submit additional, objective evidence pertaining to the membership criteria/requirements of the organization(s), specifically that the organization requires outstanding achievements of its members.

43. In Defendants RFE request to Plaintiff, Defendants provided a non-exhaustive list of evidence that Plaintiff may provide to establish eligibility under the second criteria, which included the following: (1) minimum requirements and criteria used to accept a person for membership; (2) the number of members and beneficiary's ranking among the members, if any; (3) the status of the association within the national or international community in the field of

endeavor; (4) evidence of recognized national or international experts who make determinations about membership; and (5) other relevant requirements for membership.

44. Plaintiff overwhelming satisfied this criterion. The mere fact that Mr. Lopez was a part of the Philippine's National Basketball Team, which as stated in Plaintiff's response to the RFE, only select 12 people out of the 40,000,000 people who play basketball in the Philippines, is prima facie evidence that the beneficiary is a member of an association, which requires outstanding achievements of their members. The National Basketball team for the Philippines, is objectively the top basketball team in the Philippines, this is evidenced by the numerous articles Plaintiff submitted as evidence, and which highlight the rarity of those who compete at that level. Mr. Lopez was a member of that team, meaning he is among the 3-5% of men who actually get chosen for the team, each year.

45. Even more so, and as recognized by Defendants in their Denial Notice, Plaintiff provided letters from Vincent "Chot" Reyes (former coach of the Filipino National Basketball Team), Kai Sotto (first foreign-born player to be selected to the NBA G League) and Patrick Henry Aquino (coach of the Women's Gilas basketball team) explaining the process to be picked for the Philippines Men's National Basketball Team. In the letter from Vincent Reyes, he stated that "the National Team only selects the top dozen players in the country to compete on this team" and "there is a board of experts from each of the most prestigious basketball organization in the nation that selects which athletes can enter the national team program."

46. Plaintiff indisputably provided *objective* evidence establishing Mr. Lopez's membership in associations in basketball, which require outstanding achievements of their members, as judged by recognized national and international experts, in the field of basketball.

### iii.    <u>Employment in a Critical or Essential Capacity</u>

47.     Defendant USCIS severely misapplied applied the seventh criterion to the evidence provided by Plaintiff. The seventh criterion merely requires that the beneficiary ***has*** been employed in a critical or essential capacity for organizations and establishments that have a distinguished reputation. *See* 8 CFR §214.2(o)(3)(ii)(B)(7)(emphasis added).

48.     In the present matter, Mr. Lopez was employed in a critical and/or essential capacity for the Philippine's National Basketball Team. Defendant USCIS stated that Mr. Lopez did not satisfy the seventh criterion because Plaintiff did not establish that the beneficiary was critical or essential to the team. Defendant USCIS went on to assert that "simply being a member of a team is insufficient to satisfy this criterion." Plaintiff vehemently disagrees, as the team is comprised of only twelve (12) players, each player is critical to the team. Basketball is a team sport, no one player makes or breaks a team, rather, it is the totality of each player's skills that makes or breaks a team.

49.     It is clear that the Philippine's National Basket Team felt that Mr. Lopez was critical to their team. In fact, in one of the article(s) titled, "Composed LeBron Lopez proved he belongs to Gilas, says Tab," which was included as evidence with Plaintiff's I-129 petition, the author stated, "Lopez came off the bench and registered eight points, five boards, to go with an assist and a block during his debut with the National five," and "his performance was so impressive that his name made Philippine Twitter's trending topics." Clearly, his debut performance in the 2021 FIBA Asia Cup was nothing short of impressive and goes to show the value he brings to the team, and the value he brought to that game specifically. Defendant's reasoned that because the article "did not state that the beneficiary was critical or essential to the team win against Indonesia," that the article(s) therefore did not establish that Mr. Lopez was critical or essential to the team. Thus, Defendants insinuated had the article specifically stated, "Mr. Lopez was critical and/or essential

to the win against Indonesia," then the seventh criteria would have been satisfied. However, whether the article uses the words "critical" and/or "essential" does not change the fact that Mr. Lopez was a part of the team that won against Indonesia, or the fact that he registered eight points, five boards, to go with an assist and a block during the game. It is hard to comprehend how an USCIS officer can determine that had Mr. Lopez not played in the game, and therefore not registered eight points, five boards, and an assist and block during the game that the team would have still won against Indonesia. Even more so, the letter written by Brandon Williams, who as stated above, is currently the Chief of Staff for the Philadelphia 76ers and is a former professional basketball player who played in the NBA, stated, "He was impressive in his first match representing his country and *his contribution significantly took away the game from Indonesia*."

50.     Lastly, Defendants consistently misstated the facts surrounding Mr. Lopez's membership on the Philippine's National Basketball Team. Defendants stated, "if the beneficiary was critical or essential to the team, he would not have been cut." Mr. Lopez was not cut from the Philippine's National Basketball Team. This was explained not only in Plaintiff's response to the RFE, but in Plaintiff's cover letter, and evidence, attached to the I-129 petition. Specifically, one of the articles attached to Plaintiff's I-129 titled, "LeBron Lopez Still Part of Gilas Pilipinas' future despite FIBA OQT cut," confirms that Mr. Lopez is still part of the Gilas pool, in the article Tad Baldwin (head coach for the national team) states about Mr. Lopez, "he will certainly remain a part of the Gilas pool."

51.     Plaintiff in the present matter objectively satisfied the seventh criterion set forth in 8 CFR §214.2(o)(3)(ii)(B)(7): that the beneficiary was employed in a critical or essential capacity for organizations and establishments that have a distinguished reputation.

iv.     <u>**Remuneration**</u>

52.     Finally, to meet the eighth criterion, the Plaintiff must submit evidence that the beneficiary has either commanded a high salary or will command a high salary or other remuneration for services, evidenced by contracts or other reliable evidence. *See* 8 CFR §214.2(o)(3)(ii)(B)(8).

53.     Defendant USCIS asserts that Plaintiff did not satisfy the eighth criterion because Plaintiff compared the salaries of high school players, to those of minor league players. Defendant states that to establish if the "beneficiary has either commended or will command a high salary or other remuneration you must compare salaries to all basketball players, not just high school or minor league." However, comparing the possible salaries available to Mr. Lopez, with salaries of players in the NBA, which are not possible salaries readily available to Mr. Lopez, as his young age renders him ineligible to be drafted by the NBA, is arbitrary and capricious.

54.     USCIS permits the petitioner to submit comparable evidence to establish the beneficiary's eligibility. This comparable evidence should indicate which criterion does not apply, explain in detail why it does not apply, and provide comparable evidence. USCIS has stated that persuasive evidence includes: a detailed, specific, credible statement explaining why the criterion does not readily apply to the beneficiary's occupation, or other evidence that the criterion does not readily apply to beneficiary's occupation. In addition, the petitioner must provide evidence that is comparable to the criterion along with an explanation of how or why the evidence is comparable to the criterion.

55.     Here, Plaintiff detailed how Mr. Lopez is not old enough to play in the NBA, and thus the highest team for which he is eligible is minor league basketball team(s). The average salary of a minor league basketball player, in the United States, is $39,000 per year. However, and as Plaintiff explained in its initial I-129 petition and RFE response, there are two exemptions to

the average salary of a minor league basketball player: (1) NBA-G League Select Team, which players make an annual salary of $125,000; and (2) Overtime Basketball, which pays its players $125,000.

56.     Plaintiff not only provided numerous articles that outlined the pay Mr. Lopez would be receiving, as someone that has signed with OTE, but provided you that actual contract with OTE, which states that Plaintiff would be paid a base salary of $110,000, plus a performance bonus of $15,000. This is well above the average minor league basketball salary, and thus satisfies the eighth criterion: beneficiary has either commanded a high salary or will command a high salary or other remuneration for services, evidenced by contracts or other reliable evidence.

**B.      Plaintiff is a United States Agent Petitioner for East West Private who functions as the Employer**

57.     As outlined above, in order to petition for an O-1A nonimmigrant visa, such as the visa that makes the basis of this complaint, the petitioner must be a United States employer, a United States agent for multiple employers, a foreign employer acting through a United States agent, or a United States agent functioning as the employer navigating and/or directing the career of the beneficiary. See 8 CFR, §214.2(o)(2)(i). DHS has issued regulations requiring that whichever structure is chosen, the petitioner assert the following: (1) the contents of the petition are true; (2) the petitioner agrees to receive service of process on behalf of the beneficiary; and (3) the petitioner agrees to cover the cost of travel to the home country in the event that the visa is terminated early.

58.     In the present matter, the petitioner filed as a United States agent for East West Private who functions as the employer. Accordingly, as an agent performing the function of an employer, the agent/petitioner must provide the contractual agreement between the agent and the

beneficiary, which specifies the wage offered and the other terms and conditions of employment of the beneficiary. *See* 8 CFR, §214.2(o)(2)(iv)(E).

59.     Plaintiff submitted a cover letter, which accompanied its I-129 petition. In this cover letter, Plaintiff asserted the following, as required by DHS regulation: (1) Plaintiff asserts that the contents of this petition are true to the best of their knowledge and belief; (2) Plaintiff agrees to accept service of process on behalf of the beneficiary and East West Private; (3) Plaintiff agrees to secure reasonable travel for the beneficiary in the event that the visa is terminated early. Additionally, Plaintiff provided a summary of the oral agreement between the Plaintiff, EWP and Beneficiary, which outlined the specific wage offered and terms of employment, as required by 8 CFR, §214.2(o)(2)(iv)(E).

60.     Defendants grossly misapplied the law, and in doing so held Plaintiff to a standard that was inapplicable to Plaintiff's petitioner structure. In the Denial Notice, Defendants asserted that "the evidence indicated the beneficiary had signed an agreement with Overtime Elite, and as such, appears that your company is an Agent representing both the beneficiary and one or more employers." Defendants clearly misinterpreted the structure of the petitioner in the present matter. Overtime Elite ("OTE") is not the employer of Mr. Lopez. In fact, the cover letter that was included with the original I-129 petition, included a section titled "Contracts, Petitioner Info, Itinerary, Clarification of Oral Consent," where in the Plaintiff stated, "[h]is (Mr. Lopez) events, coaching stints training stints, seminars, etc. are ***negotiated and managed by East West Private***." Plaintiff goes on to state, "***[o]ne*** of these activities is playing with Overtime, which is seasonal over the next three years." It is clear that Plaintiff is not an agent for OTE, rather, OTE is just one of the contracts that Mr. Lopez's employer, ETP, negotiated, as that is ETP's role as Mr. Lopez's employer, to negotiate contracts.

61.     Additionally, Plaintiff listed the intended schedule of activities for Mr. Lopez, during his time with OTE. Plaintiff added, directly below that schedule, that "this schedule will repeat in a similar manner over the next three years *unless Mr. Lopez signs a contract with a professional basketball league, such as the NBA*, which the petitioner is including as contemplated future activity." Meaning, this is the schedule for the time being, however, it could change if Mr. Lopez were to be signed with the NBA, thus leaving OTE. Mr. Lopez leaving OTE has no bearing on his employment with Plaintiff or EWP. EWP's purpose is to negotiate contracts and such, on behalf of Mr. Lopez. OTE is simply an agency that EWP negotiated a contract, wherein Mr. Lopez would train through OTE. OTE is not Mr. Lopez's employer.

62.     Plaintiff satisfied the requirements of a United States petitioner for EWP who functions as the Employer.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays this Court grants the following relief:

1. Accept jurisdiction over this action;

2. Reverse Defendant USCIS decision and grant Plaintiff's Form I-129, Petition for a Nonimmigrant Worker;

3. Grant reasonable attorneys' fees and costs as provided under the Equal Access to Justice Act and the APA; and

4. Grant such further relief as the Court deems just and proper.

Respectfully submitted,

*/s/Darlene Harris*
Darlene Harris
NC Bar #46087
1801 Century Park East, 25th Fl.
Los Angles, California 90067
Telephone: 614-288-8353
Facsimile: 714-243-8178


Counsel for Plaintiff